·STATE OF DELAWARE *vs.* EDWARD A. BRAND.

New Castle County, February Term, 1897.

**Election. Negligence. Presumption.**—*Under the election laws the inspector is sole custodian of the ballot-box, with the ballots, tally list and one certificate of election from the close of the election until the meeting of the Board of Canvass, and if the proof shows that the certificate was altered, and that by carelessness and negligence he enabled and permitted some other person to make such alteration, the law presumes that he permitted it and his assent thereto is implied.*

**Same.**—An election inspector may not enable or permit another to alter a certificate of election, and then shield himself from liability behind his own negligence or carelessness.

This was an indictment for the fraudulent alteration of a certificate of election by the defendant, who was an inspector.

The indictment was framed under Section 40, Chapter 39, Vol. 19, Delaware Laws, relating to elections in Wilmington Hundred ; which reads as follows :

" Every inspector of election, poll clerk, or other officer or person having the custody of any record, register of votes, or copy thereof, oath, return of votes, certificate, poll-list, or any paper, document, or evidence of any description in this act directed to be made, filed or preserved, who is guilty of stealing, wilfully destroying, mutilating, defacing, falsifying, or fraudulently removing or secreting the whole, or any part thereof, or who shall fraudulently make any entry, erasure, or alteration therein, except as allowed and directed by the provisions of this act, or who permits any other person to do so, shall upon conviction thereof be adjudged guilty of a misdemeanor."

The allegations of the indictment and of the character of the proof are stated in the charge of the Court.

*White*, Attorney General, for the State.

*Josiah Marvel*, for the defendant.

LORE, C. J., (charging the jury.)

The purpose of this statute is to secure the purity of elections, and to ascertain and enforce the honest will of the people as expressed by the ballot.

The indictment contains two counts, and charges that said Brand was inspector of the election held in the Third District of the Third Ward in the city of Wilmington, on Tuesday, the third day of November last; at which election votes were given for governor, senators, representatives, sheriff and coroner, in accordance with Section 1, Article 4, of the Constitution of this State, and that, as such inspector, he had in his custody the certificate of the election for said Third District, and so being in his custody, the first count charges that he did " wilfully, fraudulently and unlawfully *make* an alteration in said certificate of election, by then and there changing the number of votes given at such election, for one James S. Toman for the office of sheriff of New Castle County."

The second count charges that he wilfully, fraudulently and unlawfully *permitted* some person to the jurors aforesaid unknown to make the alteration. In other words, the first count charges that he made the alteration himself; the second that he permitted some other person to make it. The offence, therefore, is the fraudulent alteration of a certificate, and that Brand either made it or permitted it to be done.

It is in proof and not disputed, that two certificates of the votes cast at the said election in the said Third District, were made and signed by the defendant Brand as inspector, and by Joseph A. Murray and Frank Simmons, the other two judges; one of which certificates was put in the ballot box with the ballots, and sealed up and delivered to Brand the inspector, and the other certificate, which is the one it is claimed had been altered, Simmons testifies he delivered into the custody of Brand personally at the close of the election. Brand himself testifies that it remained in his custody, from that time until he produced and read it, at the Board of Canvass, on Thursday, Nov. 5, 1896. That it was in his actual

possession except while under some books in his home where he
lived with his mother, and for the time it was in his overcoat
pocket, which was lying on the witness stand, during the meeting
of the Board of Canvass in this room.   Simmons testifies that when
the certificate was delivered to Brand, the votes written thereon in
his own handwriting, as cast for James B. Toman, were 110.  Brand
testifies that when the certificate was produced by him at the Board
of Canvass, he read therefrom the votes cast for Toman as 130,
which he says corresponded with the certificate at that time.   Sim-
mons testifies that the word " thirty," written over the word " ten"
in the certificate, and which changed Toman's vote from 110 to
130, is not in his handwriting, and was not on the certificate when
he delivered it to Brand.   Brand testifies that it was there when
he produced and read it at the Board of Canvass on the following
Thursday.   It seems, therefore, to be undisputed that the altera-
tion, if any, was made while the certificate was in the custody of
Brand.   He testifies that he did not make it, and that it was not
made with his knowledge or consent.

The question for you to determine is, whether he made that
alteration or permitted it to be done.   If he did either he is liable
under this indictment.

Under the statutes of this State Brand as inspector of the elec-
tion district, was the custodian of the ballot box, with the ballots,
tally list and one certificate of election, deposited therein and se-
curely sealed up; and also of the other certificate, to be by him
preserved and delivered according to law.   He was the sole custo-
dian, and had exclusive control thereof from their delivery to him
at the close of the election on Tuesday until the meeting of the
Board of Canvass on the following Thursday.   They were to be by
him safely kept and delivered to the Board of Canvass in the same
condition in which he received them.   This was the duty he as-
sumed under the obligation of his oath as inspector.   During the
interval named he was in possession of the votes of the electors of
his district; they were absolutely in his power and at his mercy.

Charge.

It was a grave and sacred trust, and it was his duty to see that that trust was faithfully executed.

With this duty resting upon him, if you believe from the testimony that he was so careless and negligent in keeping the certificate, that thereby he enabled and permitted some other person to make the alteration, then the law presumes that he permitted it and his assent thereto is implied, and your verdict should be guilty.

For he may not enable or permit another to do the act, and then shield himself from liability behind his own negligence or carelessness.

Under the statute Brand would be liable, if he either made the alteration himself or by his negligence permitted another to make it.

In determining who made the alteration; you may consider the opportunity given, and the probability that it was made by his mother in his own home; also the opportunity given and the probability, whatever it may be, that it was made by any one in this room, at the meeting of the Board of Canvass; while in either case under his testimony it was not in his immediate possession; and you should consider in either case whether it is reasonable or probble that it was made without his knowledge and consent. Indeed, all the circumstances, should be considered by you in reaching your conclusion.

You are to resolve his guilt or innocence, solely from the evidence produced in this case, and may listen to no suggestions from other source whatever. The crime charged is a grave one. If that certificate was altered by Brand or by him permitted to be altered, it was a fraudulent substitution of his corrupt will for the voice of the people, it robbed twenty qualified electors of that district of their votes, and by a stroke of the pen created twenty fictitious votes. If such crimes are permitted to go unpunished, government of the people and by the people is at an end. Elections become a sham and a farce, and the cunning pen or device of corrupt election officers may be substituted for the voice of the people.

Unfortunately there is, and has been, a widespread conviction

in the community that political crimes and violations of our elec-
tion laws are pardönable and may be committed with safety to the
criminal; that juries will not convict for political offences; that
therefore election officers may take any and all risks. How far
such belief may have been responsible for the alleged corrupt con-
dition in this State in the past it is difficult to say; but it now pre-
vails to such an extent that the Constitutional Convention of this
State now in session at Dover has by a decisive vote suggested an
amendment to the Constitution, taking away from juries the trial
and determination of election and political offences, for the alleged
reason that juries will not convict.

Gentlemen, we cannot believe that any such considerations
have weight with you, or that for one moment, you will give heed
to political bias, personal sympathy or solicitation or to any other
influences save the proof in this case. If you were to do so, you
would be recreant to your duty and violate the oath you took when
you entered that jury box to decide this case according to the evi-
dence.

No greater peril can come to our land than the conviction and
proof that crime may vaunt itself and find safety in the political
passions, influences and prejudices of a jury.

This much has been said because of the gravity, and far-
reaching consequences of this class of crimes; and to impress upon
you the important duty now resting upon you.

The very gravity of the offence, however, the more impera-
tively makes it your duty, to consider and weigh carefully and
conscientiously the testimony in this case; to hold the scales of
justice evenly. If from the evidence Brand be innocent, or if you
have a reasonable doubt of his guilt, you should acquit him; but
if it satisfies you that he is guilty, your oaths, and the well-being
of society demand a verdict of guilty. There should be no evasion
of duty; to the end that this insidious and dangerous species of
crime may be stayed in its progress.

The grand jury has performed its duty. The Court has en-
deavored to instruct you fully and fairly as to the law governing

this case. It now only remains to you, gentlemen, fairly, conscientiously, under your oaths and your sense of duty to make up and render your verdict.

*Verdict, Guilty.*